We have two cases, Wells Fargo Advisors v. Sappington and v. Reagan-Tucker. If you want to step forward. I'm going to talk to counsel about that. Counsel, you were given separate times in these cases, but the same attorney's arguing and they present common issues. Does it make sense for you to argue both of them at the same time? It does, Your Honor, I think both of us believe that. Thank you. I think it would be helpful for us, too, if we go that way, okay? So we've got to look at 20 minutes. No, not 20 minutes, but we'll give you more than 10. We won't be too strict with it. Why don't you set counsel up for 12 minutes aside and we'll see if they can do it in that time. Thank you very much. All right, counsel. Good morning, Your Honors. May it please the court. My name is Ken Turnbull and I'm here on behalf of Appellant, Defendant, Respondent, Wells Fargo Advisors. The question presented for the court is simply, who decides if the parties to an arbitration agreement have agreed to class action arbitration? The district court, relying primarily on two district court decisions, held that whether class action arbitration was available is a procedural issue that simply pertains to the conduct of the proceedings in arbitration. And the district court applied a presumption of arbitrability to this question of who decides. We respectfully submit that both of those conclusions were wrong. I do want to let the court know of the procedural status. Following the district court's decision and our appeal, the matters were sent to the two different arbitrators to issue a clause construction award. One of the arbitrators, the arbitrator in the Tucker matter, issued a clause construction award concluding that class arbitration was permitted under the arbitration agreement. That award is the subject of a petition to vacate before Judge Caprone. The second arbitrator, Arbitrator Dineen, has not decided the clause construction issue. I would also like to let the court know that in a case pending in the Northern District of Illinois, Williams versus Wells Fargo, the underlying claims asserted in this case are the subject of a class action settlement in the Northern District of Illinois. The six claimants in these cases would be covered by that class. We hope class certification will get preliminary approval next week. And then the parties will have the option to remain in the class or opt out. Or as of now, they've indicated their intent to remain in the class. But I wanted to let the court know of that development. I have a practical question about that. If the parties to these suits join that class and therefore settle, will that moot this action? That would. If they don't, will it leave the named plaintiffs as the only plaintiffs in this action? Or will there still be a potential for a class action? So if the six plaintiffs, I'll call them plaintiffs just for ease. If the six plaintiffs opt out of the Williams settlement, they, those six individuals, still have the right to pursue their action here. Whether there would be numerosity to satisfy a class proceeding if one was even permitted is a question that would depend on how many people remain with claims after the settlement. But if that's settled, you agree that this is moot? Correct. If that's settled and the plaintiffs remain in that case. But if, but Wells Fargo's position, if they don't join in the settlement, would be that each and every one of them has to arbitrate separately. That's correct, Your Honor. That these six individuals have to have, the arbitration agreements require individual arbitration. Let me talk about what I think the guidelines are. I think, I'm just curious. Is a representative plaintiff who undertakes to represent a class, is that representative plaintiff at liberty to drop out and join a, join the settlement? If other class members are, have relied on or continue to rely on the representative plaintiff to wage the class action on their behalf? So two things. I think, Your Honor, the answer is yes. A named plaintiff can always settle his or her claim or class action. The other thing as a practical matter here, that in the two years since these arbitrations have been filed, not a single person has opted in or filed a consent to join. So what we have here are just six claimants. In two separate arbitrations? Correct. Three before one arbitrator and three before another. Essentially asserting the exact same claims. But the ones before the arbitrator in the Tucker case where class was permitted, when class was permitted, it was assumed to be, that it was going to be a class much more than three, right? At that time, when the arbitrator made that decision? Well, at the time, it was the Sappington arbitrator that ruled on the clause construction and said the arbitration agreement allows for class arbitration. The arbitrator didn't say how many people I think will be in this class. All right. Well, why don't we let you get to your main argument before us today? Sure. So a few guidelines that the Supreme Court has given. First, on the presumption of arbitrability, I think everyone agrees that presumption does not apply to questions of arbitrability. As the Supreme Court said in first options and in Howsam, that presumption is inverted when the issue raises a threshold or gateway question of arbitrability. Where you have a threshold or gateway issue, the presumption is that the court will decide the issue, not an arbitrator. In contrast, if it's a procedural issue, the presumption that the arbitrator will decide it will apply. The issue of whether an agreement provides for class arbitration is not simply a question about the conduct of the proceedings. Rather, whether an agreement allows for class arbitration presents a threshold question of arbitrability. And this is an issue presumptively for the court to decide. Now, plaintiffs argue this is a mere procedural issue. And they assert that the available Supreme Court and circuit court authority point in direction of allowing arbitrators to decide this issue. I think they're also suggesting that it's a question of interpreting the contract and that arbitrators do routinely interpret the contract. Respectfully, I think the plaintiffs are arguing that the question of whether class arbitration is even allowed is a mere procedural issue. What procedure will the arbitrator follow? I thought that there were two potential issues in front of us, just to pick up on what Judge Raji said. One was the issue relating to the presumption, which you just explained for us. The other was an issue of whether, as a matter of reading the contractual language, the parties agreed to arbitrate or to leave to the arbitrator the issue of arbitrability as to all issues. Correct, and I apologize, Your Honor, if I didn't pick up on that. So the second question is, start with the presumption for the sake of this argument. Assume that this is a question of arbitrability. It's presumptively for the court. That presumption can be overcome if the parties in their agreement provide clear and unmistakable. That's the guideline, clear and unmistakable guidance. Both of these contracts are to be construed under Missouri law? That's correct, but all the contracts, the arbitration agreements at issue, all six of them, in fact, are governed by Missouri law. So on the question of clear and unmistakable language, the Supreme Court's pronouncements as to the fundamental difference and the practical implications of the difference between a class action and a bilateral arbitration informs and guides us in that determination. Here, when the court is looking for clear and unmistakable evidence, they look to the words that the parties used. The agreements contain no mention of class action. Well, no, but the agreement in Sappington, for example, that clause, which does not contain a AAA arbitration clause, refers to any controversy that relates to the validity of the arbitration clause. Is that right? The agreement in Sappington says that you agree that any action instituted as a result of any controversy arising out of this agreement, your employment, or termination of your employment, shall be brought before FINRA, etc., to the exclusion of all others, both you and Wells Fargo agree that arbitration shall be the party's exclusive remedy, and that the results of such arbitration shall be final and binding upon them. And then it says any controversy relating to your duty to arbitrate here under or to the validity or enforceability of this arbitration clause shall also be arbitrated. It does, Your Honor, and I was going to complete that. Okay. Am I right in understanding that your argument basically takes this line of Supreme Court cases, starting with Stolt-Nietsen and going through to Oxford Health Plans, and basically says that we should be mindful that the court has said that it's not yet decided whether the availability of class arbitration is a question of arbitrability. And that then you want us to further take language in those opinions that suggests that there's a sufficient difference between bilateral arbitration and class arbitration that you can't assume from just general broad language about arbitrating any disagreements that what's contemplated as class arbitration. That's the foundation for your argument, right? That's correct, Your Honor. Now, we haven't spoken to that, and the Fifth Circuit, at least, when presented with that argument, didn't think that it was enough to turn its back on the plurality in Basel. Some other courts have been more persuaded by your argument. Tell us why we should be. Sure. So, at the time of briefing, we pointed out that this issue had been directly presented to four circuit courts of appeals. The third, the ninth, the fourth, and the sixth. Since briefing, the Eighth Circuit has also weighed in, in Catamaran Corp versus Towncrest Pharmacy, that was decided on July 28th. Was that also a matter of Missouri law in the way that FALA, which was the predecessor case, was an issue of Missouri law? The Eighth Circuit case, as I recall, it was premised on the Supreme Court pronouncements and the FAA, and taking guidance from the Supreme Court. All five of those courts of appeal. Well, I guess my point is that the earlier Eighth Circuit case was specifically about Missouri law. The Catamaran case, you're saying it's not clearly about Missouri law. It just takes its direction from Stolt-Nielsen and so on. Right. It follows the guidance and the clear guidance, which plaintiffs ask the court to ignore as if it has no meaning. But the Supreme Court took the time and went through the steps to enunciate those differences. The Fifth Circuit relied on or acknowledged the Basil case, as Your Honor pointed out. But Basil, as everyone recognizes, did not reach and resolve the issue. We had a plurality decision. Plaintiffs argue, as many plaintiffs following Basil argued, that the plurality plus Justice Stevens should be read to essentially conclude that this is simply a procedural issue. Two things. First, Justice Stevens had every opportunity to simply join the four justices who found that it was a procedural issue and elected not to. In fact, Justice Stevens wanted to affirm the finding of the South Carolina Supreme Court because Justice Stevens . . . Let me just go back to the language, setting aside again what I think you're focused on, which is whether it's a procedural issue as opposed to some other issue. You do acknowledge that our case law in the Second Circuit has construed similar, any controversy or dispute language as delegating questions of arbitrability to the arbitrator. Is that right? That is correct, Your Honor. The Second Circuit . . . Any Hannah and so on? The Second Circuit has also recognized that where the arbitration agreement itself does not apply, may not apply to the underlying dispute here, may not apply to a class action. In effect, where there is a carve-out, then that broad language is not enough to . . . that broad language alone is not enough to satisfy the clear and unmistakable language. In the NASDAQ UBS case, the court recognized that where there is a carve-out . . . Under Missouri law, as I understand it, there's not a lot of Missouri law, at least that I could find, but this Dotson case, which is a decision from an intermediate court in Missouri, suggests that when you use the language of any and all in connection with the validity of the agreement, that is not just broad, but it makes it clear, at least in Missouri, that the parties intended to have all matters of arbitrability be ruled on by the arbitrator. Am I wrong in reading Dotson in that way? No, I agree with you that that is what the lower court decision, the Dotson court decision says. I'm just pointing out that that is in conflict with decisions that have taken the Supreme Court guidance and applied that guidance, so the Third, the Sixth, and most recently the Eighth Circuit considered that argument and specifically said that that language by itself is not enough. I would also point out the argument that the plaintiffs make about incorporation of the AAA rules because their argument is by incorporating the AAA rules, the party somehow clearly and unmistakably delegated this issue to the arbitrator. So you obviously, I should never say obviously, you would agree that if the party said this includes class claims, then that would be clear enough. That would overcome the presumption. Indeed. Is there anything short of that, anything short of an explicit reference to class claims that would overcome this presumption that you want us to focus on? So first off, yes, obviously a clear reference to class claims. Secondarily, if the parties have, are my on the AAA rules now or just? No, you tell me. I started to talk about the AAA rules and I'm not sure if that's where Your Honor was going with it. Well, let's include the AAA rules because the AAA rules, rule one, refers to the power of the arbitrator to deal with class claims. Right. So the AAA rules, and again, keeping in mind the standard is clear and unmistakable evidence that we wanted to delegate this issue to the arbitrator. First off, we have to determine whether those AAA rules would even apply. Is there a carve out here because class actions aren't covered? But getting past that, if you look at what the plaintiffs are asking the court to conclude is clear and unmistakable, they're saying the agreement that the parties wrote said we're going to apply the 1993 securities rules. Plaintiffs say, but wait, the 1993 rules were amended in 1999. In 1999, supplemental rules came in and the supplemental rules give this authority to arbitrators. And the plaintiff's argument, if you follow it, says the parties adopted the 1993 rules. By inference, they adopt the 99 rules and the supplementary rules. And that therefore . . . Let's put it this way. As the drafter, you took the risk that those rules that was part of the agreement might include giving to the arbitrator the power to deal with arbitrability issues. Yeah. And it's interesting. I think the timing is particularly interesting here because these agreements that are at issue before the court, if you combine the two cases, were signed in 2011 through 2013, long after the 1999 amendments. And yet, the agreements choose the 1993 rules, which do not have any delegation of this issue to an arbitrator. Now, could it be that we chose 93, we wrote 93, but we recognize that 93 means 99 and that also means the supplementary rules? Maybe. But it's equally plausible that it means what it says. We want to use the 1993 rules. And the courts are clear that parties can choose whatever rules they want. The fact that there are two possible explanations for this, in and of itself, demonstrates that the clear and unmistakable standard has not been met. All right. Thank you very much. I think we're going to hear from your adversary, and then I know you want to reserve time for rebuttal. May it please the Court. My name is Paul Mollica, and I'm representing the respondents at Belize. Before you start with your main argument, tell us, are we going to have a moot case in another week or not? Well, Your Honor, I've been lurking in the back of the courtroom in Williams, which is in my hometown in Chicago, and we attempted to intervene in the case, but the judge denied our right to intervene. You will see in Judge Caproni's decision that there was an argument about which case was first filed. It was the second part of her opinion. We prevailed in the Southern District of New York. Our case was first filed. The judge in the District Court in Kelowna. Tell me, are we going to have a moot case? Is the client going to join in the settlement? Are the six parties going to join in the settlement, and this will all be moot? After we were denied the right to intervene, we have to consult with our clients about the next step. Our intention is to oppose the settlement. So nothing is really settled at this point. So, Your Honor, you were right. It's Missouri law, and both parties argued the Missouri law issues to the arbitrators, and there was a clause construction order on a ward using Missington. Right. Missouri, there is one kind of twist to this, though, and that is that it's federal substantive law under the FAA that requires the clearly and unmistakable expression. Missouri law has incorporated that. Exactly. You're right. Exactly. So you were right to stress the different cases decided by this court under different laws, Connecticut, New York, whatever. But the same standard. Right. And the Eighth Circuit case, the Catamaran case, was from the District of Iowa. I don't know if it actually said which state's law applies, but it may not be in Missouri. But NASDAQ decided most recently, after Stolten-Nielsen and Concepcion, holds that the any or all kind of language is inclusive and is a clear and unmistakable delegation to the arbitrator, even of questions of arbitrability. So any means any. Any questions of class action? I mean, that's what the Supreme Court has suggested is not. Well, so the Supreme Court has done something very interesting with class actions and arbitration. They've said that it's too important to allow an arbitrator, on their own esteem, to decide that there's going to be a class or not a class. It cannot be an issue of the arbitrator's sense of industrial justice or public policy. The parties have to affirmatively consent to a class. They have not found the language, you know, we're sending any dispute to arbitration, enough to signal that. Simply agreeing to arbitrate does not signal consent. That's right. But they've yet to have occasion, in any case other than Basel, to evaluate whether class is a question of arbitrarily or not. I understand that, that we don't have an absolute holding. But why should we not conclude, as the Sixth Circuit did, that the Supreme Court's given every indication short of an outright holding, that class-wide arbitrability is a gateway rather than a subsidiary question? I mean, that's the language from Reid. You're right, Your Honor. And so those circuits regarded Basel as a dead letter, which is not the law in this circuit. This circuit in the UBS case adopted Basel in construing an arbitration, clear and unmistakable issue. Isn't it the case that the Supreme Court opinions, which have made the point that Basel was a mere plurality, that insofar as what those later Supreme Court decisions wrote, those were dictum on this issue? The later decisions, of course, Concepcion doesn't discuss Basel because the issue wasn't presented there. It was really in Stolt-Nielsen. And what Stolt-Nielsen held was they talked about the second part of Basel, about the rule of construction that you use for an arbitration agreement. They didn't address the who decides issue. That remains completely up in the air because this circuit and the Supreme Court regard arbitration as a substitute for a judicial decision, but otherwise regard arbitrators as capable of handling and faithfully applying Stolt-Nielsen, Concepcion, all the other rules. We're not here about whether a class ought to be certified. We're here about who gets to decide whether the party's consented to that. And right now, there is no law other than Basel that even indicates who gets to decide that issue. And the Fifth Circuit said that Basel is controlling. They had Stolt-Nielsen. They had Concepcion in front of them. They said they don't really affect Basel. In fact, they regard Justice Stevens' opinion as a fifth vote. The Eighth Circuit seems to go the other way, even in the context of an AAA clause. That's right. Let me talk about the AAA clause for a moment. But before I get there, Judge, you talked about the Sappington order. I want to talk about the other five claims, Sappington being unique. The defendants have claimed that it's not a clear and unmistakable, but they do use the any language, and it's not just between you and Wells Fargo. It also includes, and this is found in the Tucker Joint Appendix at page 34, not just Wells Fargo, but a client or any other person. It is about as broad as it can be. So it's a mistake to say that it was limited to just the two parties. This is not necessarily one of those agreements that you can view as a bilateral. That's true, Your Honor. Is that your point? That's right, Your Honor. And so any party reading this language that says any controversy or dispute shall be submitted for arbitration would assume that the arbitrator got to decide everything. Sappington is even clearer, Your Honor, because it even says that everything including disputes about enforceability go to the arbitrator. One of the reasons that the Supreme Court in some of these opinions has expressed doubt about that is because they've identified such a difference between bilateral arbitrability, and particularly its informality, and class arbitrability that the suggestion has been made that it's more of a gateway issue. Tell us why we shouldn't reach that conclusion. Okay. Because as you've argued, the Supreme Court has not set it as a matter of a holding. Right. So, Your Honor, in Howsam, that's where the court sets out the standard. And then this court has boiled it down to two issues that are questions of arbitrability. Howsam says only narrow circumstances. So this court says it's two issues, enforceability and scope. And neither issue is controverted here. We agree there's an enforceable agreement. We agree that it includes our FLSA and state law claims. So everything else that is not enforceability or scope, by default, goes to the arbitrator. And that's consistent with Basil and all the other cases that have been decided by this court. It is special. But the party opposing class already gets a bump because there's the clear and unmistakable rule. It can't simply be assumed. It can't be inferred by the arbitrator. It has to be affirmatively declared in the agreement. So they get protection. But they don't need the extra added protection that only a court gets to decide it. It's otherwise, as this court has held in Parisi, which was my case, by the way, so I lost this issue on that one, and Cohen, is that it's procedural. And even just the late Justice Scalia in Concepcion describes class as procedural mechanisms. So it's pretty clear. I don't necessarily have to prove it's procedural. All I have to do is prove it's not enforceability or scope. It's not. Because it's not a contingent point on which we have to have a decision before we can commence arbitration.  And so it is. Right. Both parties here have already agreed to arbitrate. And the question is what are you arbitrating? How do you proceed? That's right, Your Honor. And so what happens from here is that the claimants go back and argue. Actually, it's already been briefed before the arbitrators whether we consented to class procedures. And one judge, one arbitrator, Arrington, in a very thorough opinion, determined that we did for a variety of reasons. The other one is held in advance until you all make this decision. But we have argued and would and that the arbitrators as well, that they have the power to do this, and Arbitrator Arrington agreed with us. Now, what about that clause in Sappington that says that any controversy relating to the duty to arbitrate shall be arbitrated before FINRA? That's right, Your Honor. So that's a major difference between the agreements. There was no AAA backstop in Sappington. Right. And FINRA doesn't allow class arbitration. That's right, Your Honor. So FINRA rejected Sappington's complaint, and the parties don't have a fallback in the agreement. But interestingly, Sappington's arbitration has continued in front of the AAA. The arbitrator has given Wells Fargo the opportunity to argue that it can't be there for whatever reason, and it hasn't been argued yet. I mean, it hasn't they haven't argued that. So she's still in front of the AAA. Notwithstanding that clause? Notwithstanding that clause. In other words, it's interesting because under the FAA, if there were an unavailability of an arbitration forum, then the court would have the default obligation to pick an arbitrator. But the parties have impliedly up to this point consented to the AAA. Well, I'm puzzled. This language seems to me to be susceptible to the interpretation that there's no agreement to arbitrate at all. Because if you say everybody consents to arbitrate before FINRA, FINRA says nothing doing. It seems to me it would not be a frivolous argument to say, well, you know, we wanted an arbitration before FINRA. It's not just like it's not as if FINRA. Well, I mean, the circumstances under which they consented don't materialize. And that seems to me to be to leave the absence of an arbitration agreement altogether. That's a very fair point, Your Honor. And the parties have not argued up to this point that the absence of the FINRA forum means that the agreement was blown up. Both parties instead have just assented to, at this point, to AAA arbitration. There is, of course, a robust case law under the FAA about what you do when the forum is unavailable. It doesn't necessarily blow the agreement up, but it does invoke another section of the FAA that requires appointment of another arbitrator. So, Your Honor. More or less by your conduct. I mean, both parties have expressed a strong interest in arbitrating. Yes, Your Honor. We did file arbitration complaints, and we've been proceeding down that road because, frankly, we think we're obliged to under the agreement, under the standing law. So, unless Your Honors have any other questions, I urge affirmance. Let me ask you about the AAA reference. As your adversary mentioned, it refers to the 1993 rules. And even if those rules incorporate by reference the later commercial rules, can we really say that an indirect authorization of that sort represents a clear and unmistakable evidence of intent? I could weep with joy that you asked me that question because I almost forgot to tell you. I'm not asking you to weep. Just answer the question. Okay. So, in this Court's non-precedential decision in Surgat Nefticus, at page 268, it addressed this exact question. The party argued that a specific set of rules applied and only that set of rules. That's the summary order? Yes, that's this Court's decision, S-U-R-G-U-T-N-E-F-T-E-G-A-S. Summary order, yes. Right. And so they made the same argument, that because it only identified one set of rules, that's the rule that applied. But this Court said that because Rule 1 says it incorporates all subsequent developments, that they just made the direct connection to the subsequent rules. That that is a direct reference to including the provision in the AAA rules that prescribes that the arbitrator decides issues of enforceability. And with that, unless there are any other questions, I urge affirmance. And thank you, Your Honor. Thank you. Mr. Chambl. Thank you. I want to clarify one point that my adversary commented and passed over as if it was fact. And that was his claim that the scope and validity of the agreement are not at issue. That is absolutely false. It's what's before the court. A question of arbitrability includes scope and validity. Scope, as the Supreme Court and the Second Circuit has instructed, includes who is bound by the agreement. That's Howsam, that's First Options, that's this Court in VRG. Scope also includes what type of controversy is encompassed by this agreement. Because remember, an arbitrator is only authorized to decide that which the parties gave the arbitrator the authority to do. And the Supreme Court, in Stolt, in Concepcion, even in the Oxford decision, have gone to great lengths to say the question of class arbitrability is not procedural because it brings these issues into play. Who is bound by this agreement? Are non-signatories bound by an agreement that's allegedly authorizes class arbitration? A non-signatory hasn't authorized an arbitrator to do anything. Yet, you acknowledge that at least Dotson, as a matter of constrained Missouri law, when we read the contract, seems to suggest that issues or disputes relating to validity are for the arbitrator to decide. You acknowledged that earlier. I acknowledge that that's the lower court. But I pointed out to the court that the FAA provides the guiding principle here. And so, number one, what parties are bound is an issue fundamentally at stake here. But you don't dispute that all of the parties would be bound if they pursued it individually. I mean, every member of the class would be bound if they brought an arbitration individually, right? And indeed, you're saying that arbitration is how they would have to resolve these disputes. You're just saying they have to do it individually. And that goes to – thank you, Your Honor, because my adversary said – My point is that that doesn't leave us with any parties who are being subjected to arbitration. It is just whether they will do it collectively in a class action or individually. But the parties are bound. The parties are bound to arbitrate their disputes. Here, the agreement defines what disputes must be arbitrated. You said there's – They're bilateral. Who's bound? Yeah. All these parties are bound. It's just what kind of mechanism they're going to have to use. Right. And so when you talk about what are my rights, for example, let's assume I didn't sign any arbitration agreement. Among the thousands of Wells Fargo employees that this group may want to represent, there may be some that didn't sign arbitration agreements. How can an arbitrator decide any issue? In fact, the Supreme Court, Justice Alito and Oxford Health raised exactly that point. Well, won't that be an issue for defining the class? But that presupposes that there can be a class. The arbitrator doesn't have the right to decide a non-signatory's obligation as to how he or she wants to pursue his claims, whether he has to proceed in arbitration. It's perfectly ascertainable after the fact whether a person is involved in the – does have an arbitration agreement or not. And, Your Honor, that's what the plaintiffs say. The plaintiffs say, well, wait. We can just find out. Plaintiffs in their brief say maybe everybody signed the same agreement that Mr. Tucker and Mr. – I'm sorry, Ms. Kelly and Mr. Laborde signed because, by the way, the arbitrator said Ms. Sappington cannot proceed on a class, must proceed individually. But they say, well, maybe everyone signed the same agreement. Maybe, maybe not. But where does an arbitrator chosen by this counsel representing these three people have the right to select an arbitrator to decide that issue for everyone else who has the right to choose their own arbitrator, to choose their own counsel, to make their own arguments before the court? But you agreed, just to go back to first principles, that the parties could explicitly allow for class arbitration. Yeah. That raises questions. Same concerns. We would, and that raises questions. The court actually struggled with some of those, I think, last week and clarified a few weeks ago in the Jock v. Sterling case. Decided on very narrow grounds about law of the case, I understand, but also recognize that how can an arbitration bind non-parties to an arbitration? The other thing that scope, as I mentioned, covers is what type of controversy. A class action, according to the Supreme Court, is a type of controversy. And that's why the Supreme Court goes out of its way to highlight the fundamental differences. And I don't think the Supreme Court is concerned with labels. Do we want to call it a gateway? I hate to belabor this point, Mr. Turnbull, but the language of both of these contracts, you talk about types of controversy, and language of the contracts of the agreements says any controversy. Between you, the individual, and me, the company. Not between you and a group of other people and the company, it's between you and the company. Could you just let me out here, could you just tell me where in your briefs you address the language contained in that clause, the any controversy relating to the validity? It's in the clear and unmistakable. Is it in there? Okay. But the court— While you're interrupted, would you make sure that before you sit down, you address Mr. Malika's argument that how you get to be heard on whether or not that contract agreed to arbitration is by having the arbitrator apply the stricter test that the Supreme Court has made clear has to apply to the question of whether you've agreed to class arbitration. It's not by having a court decide the question. He thought that you were looking for an extra layer of protection that's not required. Sure, Your Honor. The courts have referred to issues as who decides in the first entrance, arbitrator or court. Procedural issues, we agree, are for an arbitrator. The issue here is, is this a procedural issue? It's been described a lot of different ways. Is it a gateway issue? Is it a threshold issue? Is it an important issue? And the court, in its Stolt-Nielsen and Concepcion and even Oxford Health decisions, says we're not concerned with labels. They do fit it into the court's guidance about are non-parties bound, which fits into Howsam and first options, what type of controversies. But what the court, I think, is really saying is, is this an issue that the parties would expect a court to decide? And what the court has said in highlighting all of these differences, these fundamental differences and the implications of class action arbitration, can you even have a class action arbitration against non-signatories? Arbitration with limited judicial review. That's why the Supreme Court says class arbitration is poorly suited, or class actions are poorly suited for arbitrations. They say that because, as they state, it is difficult to believe that the parties would have believed this is an issue to be decided by an arbitrator. Actually, just as a matter of interest, are you aware, not in this case, but in any case, of parties, corporate entity and individual employees, say, agreeing to arbitration of class claims? I am not aware one way or the other, Your Honor. I'm not. Anything else? No, thank you, Your Honor. All right. We want to thank both parties for your arguments. We're going to take the matter under advisement. Thank you very much. The remaining two cases on our calendar today are being submitted, so we are concluded and stand adjourned. Court is adjourned.